677 A.2d 660

**B.F. SAUL REAL ESTATE INVESTMENT TRUST**

v.

**CLERK OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY, et al.**

**No. 1580, Sept. Term, 1995.**

Court of Special Appeals of Maryland.

June 5, 1996.

Richard J. Magid (Wilbur D. Preston and Whiteford, Taylor & Preston, on the brief), Baltimore, for appellant.

Julia M. Freit, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, Barbara L. Holtz, Acting County Atty. and Bernadette F. Lamson, Associate County Atty., Upper Marlboro, on the brief), for appellees Clerks of Anne Arundel and Prince George's County and Director of Finance.

Phillip F. Scheibe, County Atty. and Patricia A. Logan, Senior Asst. County Atty., Annapolis, on the brief, for appellee Clerk of Anne Arundel Co.

Argued before BLOOM, MURPHY and SALMON, JJ.

BLOOM, Judge.

Appellant, B.F. Saul Real Estate Investment Trust, filed petitions of appeal with the Maryland Tax Court from the denial of its claims for refunds of recordation and transfer taxes collected by the Clerks of the Circuit Courts for Anne Arundel and Prince George's Counties (the Clerks) on a 1993 transfer of real property from appellant to its wholly owned subsidiary, Dearborn Corporation (Dearborn). After consolidating the appeals, the Tax Court ruled that appellant's

transfers were exempt from taxation by virtue of Md.Code (1985, 1994 Repl.Vol.) § 12–108(p) and § 13–207(a)(9) of the Tax–Property Article (T–P). The Clerks, who had been joined by Anne Arundel County and the Director of Finance for Prince George's County as interested parties, appealed to the Circuit Court for Anne Arundel County, which reversed the Tax Court, holding, as a matter of law, that the transfers were not exempt under T–P § 12–108(p). In this appeal from that ruling, appellant presents two questions, which we combine and rephrase as follows:

Did the trial court err in interpreting T–P § 12–108(p) so that appellant's transfers of property did not fall within the taxation exception?

## Facts

As both the Tax Court and the circuit court noted, the parties do not dispute the facts in this case. On 5 January 1993, appellant conveyed certain real estate holdings located in Montgomery, Prince George's, and Anne Arundel Counties to its wholly-owned subsidiary, Dearborn. In exchange for the properties, Dearborn issued all of its original stock to appellant. Appellees do not dispute that this reorganization of assets was not a sale or transfer of real property to a third-party or a "step-type transaction."

Dearborn expressly assumed the debts secured by existing deeds of trust on the properties and was substituted as the borrower under the debt documents, but appellant, as the parent company and original debtor, was not released from its obligations or the indebtedness. Appellant paid the transfer and recordation taxes charged by the Clerks of the Circuit Courts for Anne Arundel, Prince George's, and Montgomery Counties and filed with each of those Clerks a refund claim on 11 March 1993. The Clerk of the Circuit Court for Montgomery County agreed with appellee that the transaction was exempt from taxation and granted appellant's request for refunds. The Clerks of the Circuit Courts for Anne Arundel and Prince George's Counties issued formal denials of appellant's refund requests by letters dated 18 March 1994 and 12

April 1994, respectively. Appellant filed appeals to the Tax
Court promptly after receipt of those letters.

## I

█ At the outset, the Clerk of the Circuit Court for Anne
Arundel County, in a cross-appeal, asserts that appellant filed
an untimely appeal to the Maryland Tax Court from the
Clerk's denial of its refund claim. The cross-appellant argues
that the combination of the following two statutes governing
final decisions and the timing of appeals of tax decisions bar
appellant's claim:

T–P § 14–911(b):

If a refund claim made under § 14–908 of this subtitle is not
allowed and is not denied on or before six months from the
date the refund claim is submitted, the person submitting
the claim may treat the claim as denied.

T–P § 14–512(d):

The person who submitted a tax refund claim under § 14–
908 of this title may appeal to the Maryland Tax Court on
or before 30 days from the date that the notice of disallow-
ance is received by the person. However, if a refund claim
under § 14–911 of this title is not allowed or disallowed on
or before six months from the date of filing the claim, the
person who filed the claim may:

(1) deem the claim to be finally disallowed;

(2) submit an appeal to the Maryland Tax Court.

Cross-appellant asserts that on 18 September 1993, six
months after it requested a refund, appellant had to consider
the request denied, pursuant to T–P § 14–911(b), because the
request had not been acted upon; therefore, the thirty day
appeal window ended 11 October 1993, seven months after the
initial refund request. Cross-appellant contends that because
appellant waited a year to inquire about the status of its
request and then filed an appeal, that appeal is untimely.

█ Appellant correctly points out, however, that the party
requesting a refund has discretion whether to treat the inac-

tion as a denial subject to an appeal after six months or to insist on a formal decision. The word "may" in both statutes clearly demonstrates that appellant was entitled to treat its request as denied but was under no obligation to do so. *See Crofton Partners v. Anne Arundel County,* 99 Md.App. 233, 247, 636 A.2d 487, *cert. denied,* 335 Md. 81, 642 A.2d 192 (1994) (giving Crofton the discretion to treat the County's inaction as a denial in interpreting a similar statute regulating appeals of utility charges). Because we find that T–P §§ 14–911(b) and 14–512(d) do not mandate a time of final decision when the Clerk has failed to act, we affirm the ruling of both the Maryland Tax Court and the trial court in rejecting appellees' cross-appeal claim that the appeal to the Tax Court was untimely.

## II

■ Appellant contends that the transaction taxed by the Clerks actually falls under the exemption from recordation taxes provided in T–P § 12–108(p) and the corresponding exemption from transfer taxes under T–P § 13–207(a)(9) (which provides that an instrument is not subject to transfer tax to the same extent that it is not subject to recordation tax under T–P § 12–108(p)).

T–P § 12–108(p) provides:

(p) Transfer of corporate property between related corporations. An instrument of writing is not subject to recordation tax if the instrument of writing is:

(1) a transfer of title to real estate between a parent corporation and its subsidiary corporation or between two or more subsidiary corporations wholly owned by the same parent corporation, if the parent corporation is an original stockholder of the subsidiary corporation, or subsidiary corporations, or became a stockholder through gift or bequest from an original stockholder of the subsidiary corporation, or subsidiary corporations, for:

(i) no consideration;

(ii) nominal consideration; or

(iii) consideration that comprises only the issuance, cancellation, or surrender of stock of a subsidiary corporation.

Appellees concede that the transaction in question meets all the requirements of this section except for the fact that the transferee took the property subject to deeds of trust. Appellees contend that assumption of the debts secured by the deeds of trust constitutes consideration to the transferror in addition to the stock issued by the transferee. Appellant, however, argues that the purpose of this exemption was to allow Maryland businesses the flexibility of reorganizing their assets without burdensome taxes. Moreover, appellant is not avoiding the debt on the property, it is merely delegating the initial responsibility for the debt to its wholly owned subsidiary. As the Tax Court described it, the money owed is coming from the same pants, just from a different pocket. Appellees have offered us no logical theory that counters this realistic fact and have not demonstrated any financial gain made by appellant from this transaction. Rather, they rely entirely on formalistic interpretation of the statutes involved.

Appellees aver that T–P § 12–108(p) must be read in conjunction with other sections of the subtitle to glean the proper meaning. Specifically, they point to T–P § 12–103(a), **Rate of Tax**, which provides:

**Application of recordation tax rates.**—The recordation tax rates under this section are applied to each $500 or fraction of $500 of consideration payable or of the principal amount of the debt secured for an instrument of writing. The consideration includes the amount of any mortgage or deed of trust assumed by the grantee.

Appellees also direct us to T–P § 12–104(a), which states in part:

(a) [T]he consideration payable, including any portion of any mortgage or deed of trust assumed by the grantee, or the principal amount of the secured debt incurred, shall be described ... in an affidavit. ...

Appellees rely upon these sections to define consideration in T–P § 12–108(p). As the Tax Court correctly held, however, when applying the exemption statute, we do not reach the calculation of the tax in T–P § 12–103(a) or the recital of the debt under T–P § 12–104(a) unless the exemption from taxation provided in T–P § 12–108(p) does not apply. Consequently, regardless of the extensive legislative history recited by appellees, those statutes are simply inapposite. T–P §§ 12–103(a) and 12–104(a) impose the tax, if the transaction is taxable, on the consideration payable by the transferee. If the property transferred is subject to a mortgage, the consideration payable by the transferee includes not only the consideration payable to the transferror but also the consideration that will eventually be payable to the mortgagee. T–P § 12–108(p), however, is not concerned with the consideration eventually payable by the subsidiary corporation; the exemption depends on what consideration flows to the parent corporation. If, as in this case, the sole consideration moving to the parent corporation is the stock issued by the subsidiary, the transaction is exempt. We have expressly stated that we interpret the recordation and tax transfer statutes as a tax on the substance of the transfer and not on its form. *New Parkman Housing Ltd. Partnership v. State Dept. of Assessments & Taxation*, 98 Md.App. 431, 440–41, 633 A.2d 495 (1993). Looking to the substance of the transaction in question, we conclude that appellant conveyed to its subsidiary its equity in the real estate and received from its subsidiary only the stock issued by the subsidiary.

Appellees also rely upon T–P § 12–108(c), which provides that when property is transferred subject to a mortgage or deed of trust the recordation tax does not apply to the principal amount of the debt assumed by the transferee, if the instrument of writing transfers the property from the transferror to certain family members described therein. Appellees contend that, if the Legislature had meant to exempt mortgages and deeds of trust from the definition of consideration, it would have explicitly stated the exception in T–P § 12–108(p) as it did in T–P § 12–108(c). The analogy is

faulty. Subsection (c) of T–P § 12–108, unlike subsection (p), does not provide a total exemption from tax; it merely exempts from tax that part of the consideration payable by the transferee to a mortgagee. Subsection (p), as noted *supra*, totally exempts from taxation a transfer from a parent corporation to a wholly owned subsidiary if it received in exchange "consideration that comprises only the issuance, cancellation, or surrender of stock of a subsidiary corporation." The assumption by the subsidiary corporation of the obligation to retire a debt secured by the lien of a mortgage or deed of trust of the property transferred to it is not consideration flowing to the parent corporation.

■■■ The intent of the General Assembly in enacting T–P § 12–108(p) is indicated by the history of the exemption. We noted in *New Parkman, supra,* 98 Md.App. at 443 n. 5, 633 A.2d 495, that

> [t]he legislative history file for Senate Bill 747 [which included § 12–108(p) ] which was enacted as the 1986 Amendment includes an article from the *Howard County Sun,* dated March 16, 1986, which quotes Senator Levitan as saying that "[t]he bill was never intended to tax transfers between a parent company and a subsidiary, just the deals where they set up a corporation to avoid the tax."

Appellees have offered no suggestion that appellant created the subsidiary corporation and conveyed the property to it for the purpose of avoiding transfer and recordation taxes. We reject the interpretation of T–P § 12–108(p) that would impose a tax on appellant's transfer to Dearborn of property subject to deeds of trust on the theory that assumption by Dearborn of the obligation to pay the indebtedness secured by the deeds of trust constituted consideration to appellant in addition to the stock issued by Dearborn. While we must construe tax exemptions in favor of the State, *New Parkman, supra,* 98 Md.App. at 441, 633 A.2d 495, our interpretation must be a reasonable one, not one that is "illogical or incompatible with common sense." *State v. Thompson,* 332 Md. 1, 8, 629 A.2d 731 (1993). We hold that the trial court erred in

denying appellant the exclusion from transfer taxes to which it was entitled under T–P § 12–108(p). We need not address appellant's alternate interpretation of the statute.

JUDGMENT REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY WITH INSTRUCTION TO AFFIRM THE DECISION OF THE MARYLAND TAX COURT.

COSTS TO BE PAID BY APPELLEES.